IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Corporation, | ) ) ) | CIV. NO. 11-00492 JMS/KSC |
| | ) | ORDER GRANTING PLAINTIFF |
| | ) | STATE FARM FIRE AND CASUALTY |
| Plaintiff, | ) | COMPANY'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| vs. | ) | |
| | ) | |
| CURTIS L. WIMBERLY and JOCELYN B. WIMBERLY, Individually and as Trustees of the Curtis L. Wimberly and Jocelyn B. Wimberly Revocable Trust, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFF STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff State Farm Fire and Casualty Company ("State Farm") seeks a declaration under 28 U.S.C. § 2201 that it owes no duty to defend or indemnify its policyholders Defendants Curtis and Jocelyn Wimberly, Individually and as Trustees of the Curtis L. Wimberly and Jocelyn B. Wimberly Revocable Trust (collectively, "the Wimberlys"), against an action pending in the Circuit Court of the First Circuit, State of Hawaii ("the underlying action"). The complaint in the

underlying action alleges claims related to a failure by the Wimberlys and their real estate agent to disclose the condition of a retaining wall on real property that the Wimberlys sold to Ronney Shimabukuro ("Shimabukuro").

Before the court is State Farm's Motion for Summary Judgment, seeking a ruling that it has no duty to defend and/or indemnify the Wimberlys for claims Shimabukuro is asserting against them in the underlying action because (1) the claims do not assert "bodily injury," "property damage," or "personal injury" caused by an "occurrence" as defined in State Farm's insurance policy ("the Policy"), and (2) coverage is otherwise excluded under the Policy.  Based on the following, the court finds that the complaint in the underlying action does not raise the possibility of coverage, and therefore GRANTS State Farm's Motion for Summary Judgment.

## II. **BACKGROUND**

### A.    **Factual Background**

The court first describes the essential facts alleged against the Wimberlys in the underlying action.  The allegations are not disputed by the parties and are assumed to be true for purposes of this declaratory relief action.  *See, e.g.*, *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944-45 (9th

Cir. 2004) ("The focus is on the alleged claims and facts.").  The court then sets forth the relevant provisions of the Policy.

### 1.    *The Underlying Action*

By contract dated February 28, 2009, the Wimberlys sold real property located at 1583 Ala Lani Street in Honolulu, Hawaii to Shimabukuro, with a June 2009 closing.  Doc. No. 18-3, Brown Decl. Ex. A ("Underlying Compl.") ¶¶ 7, 12.  The Wimberlys were represented by real estate agent JoAnn Matsuo ("Matsuo") during the transaction.  *Id.* ¶ 4, 7.  As part of the transaction, the Wimberlys, assisted by Matsuo, prepared and delivered a "Seller's Real Property Disclosure Statement" to Shimabukuro.  *Id.* ¶ 8.  Shimabukuro, after taking possession of the property, allegedly cleared vegetation and discovered "patchwork repair and cracks and damages" to a retaining wall, and "learned that the wall was in imminent danger of collapse."  *Id.* ¶ 14.  The condition of the wall was not disclosed in the Seller's Real Property Disclosure Statement.  *Id.* ¶ 10. The cost to repair the retaining wall and stabilize the land "exceeds $100,000."  *Id.* ¶ 15.

///

///

///

3

On February 28, 2011, based on the sales transaction and the undisclosed condition of the retaining wall, Shimabukuro[1] filed the underlying action against the Wimberlys and Matsuo's firm.  The underlying complaint makes the following relevant factual allegations:

> 8.     On or about March 9, 2009, Sellers [the Wimberlys] prepared and delivered to Plaintiff [Shimabukuro] a "Seller's Real Property Disclosure Statement" in connection with the purchase of the Property.
>
> . . .
>
> 10.    In said "Seller's Real Property Disclosure Statement" the Sellers denied any knowledge of settling or slippage, sliding subsidence, or other soil problem and denied any knowledge of drainage, water infiltration, seepage, flooding, or grading problems, nor was any mention made of patchwork repairs to any retaining wall on the property.
>
> 11.    Said denials and omissions were misrepresentations, as the Sellers, personally or through their agents, were aware, or should have been aware, that patchwork had been done on the retaining wall on the rear of the property, including the footings of the wall, specifically because the wall was no longer stable, due to earth movement and soil problems.
>
> . . .
>
> 13.    That Plaintiff relied upon the representations made in the "Seller's Real Property Disclosure

---

[1] The underlying complaint was brought by Ronney H. Shimabukuro, individually and as trustee of the Ronney H. Shimabukuro Trust.  Doc. No. 18-3, Underlying Compl.  The court refers to both as "Shimabukuro."

Statement" in purchasing the property and was
unaware of the cracks and unstable nature of the
retaining wall due to the heavy growth of
vegetation which concealed both the patchwork
repairs and the cracks and damages to the retaining
wall.

14.   That subsequent to taking possession of the
Property, Plaintiff cleared the vegetation and
discovered the patchwork repair and cracks and
damages to the retaining wall, and learned that the
wall was in imminent danger of collapse, all of
which was known, or should have been known in
the exercise of reasonable care, by the Defendants,
and each of them at the time the "Seller's Real
Property Disclosure Statement" was prepared and
delivered to Plaintiff and upon which Plaintiff was
expected to rely.

Based on those factual allegations, the underlying complaint asserts

claims against all the underlying defendants for misrepresentation (Count One),

negligence (Count Two), breach of contract (Count Three), rescission (Count

Four), unfair and deceptive trade practices (Count Five), and punitive damages

(Count Six).

Because it is entitled "negligence," Count Two is particularly

important for purposes of assessing whether the Wimberlys are entitled to

insurance coverage.  In relevant part, Count Two provides:

Based upon the above-described acts, Defendants are
liable to the Plaintiff [Shimabukuro] for negligence by,
among other things, failing to exercise reasonable care in

> preparing the "Seller's Real Property Disclosure Statement" and making the appropriate inquiries to determine the condition of the property, and/or failing to accurately complete the "Seller's Real Property Disclosure Statement", knowing that Plaintiff would rely upon the representations of Defendants and their agents.

*Id.* ¶ 19.

### 2. **The Policy**

State Farm insured the Wimberlys' premises at 1583 Ala Lani Street under a Rental Dwelling Policy, No. 91-BX-9370-9.  Doc. No. 15-3, Miller Decl. Ex. 2 ("the Policy").  As clarified by State Farm's counsel at the oral hearing on the Motion, the Wimberlys -- as owners who are alleged to be residents and citizens of California at all relevant times -- were renting out the premises and thus were insured by a Rental Dwelling Policy.  After the underlying action was filed, the Wimberlys tendered the action to State Farm.  State Farm has provided the Wimberlys a defense of the underlying action, subject to a reservation of rights. *See* Doc. No. 1, Compl. ¶ 15.

The Policy contains the following relevant provisions (bold in original):

///

///

///

6

# DEFINITIONS

1.   "**bodily injury**" means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom[.]

. . .

5.   "**insured premises**" means:
     a.   the **residence premises**[.]

. . .

8.   "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
     a.   **bodily injury**;
     b.   **property damage**; or
     c.   **personal injury**;
     during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

9.   "**personal injury**" means injury arising out of one or more of the following offenses:
     a.   false arrest, detention or imprisonment or malicious prosecution;
     b.   libel, slander or defamation of character; or
     c.   invasion of privacy, wrongful eviction or wrongful entry.

10.  "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property.  Theft or conversion of property by any **insured** is not considered to be **property damage**.

## SECTION II -- LIABILITY COVERAGES

## COVERAGE L -- BUSINESS LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury**, **personal injury**,

or **property damage** to which this coverage applies, caused by an **occurrence**, and which arises from the ownership, maintenance, or use of the **insured premises**, we will:

1.      pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.      provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

. . .

## SECTION II -- EXCLUSIONS

1.      **Coverage L -- Business Liability and Coverage M -- Premises Medical Payments** do not apply to:

   a.      **bodily injury**, **personal injury**, or **property damage**:

      (1)      which is either expected or intended by an **insured**; or

      (2)      to any person or property which is the result of willful and malicious acts of an **insured**[.]

. . .

2.      **Coverage L -- Business Liability** does not apply to:

   a.      liability:

      . . .

      (2)      assumed under any unwritten **contract** or agreement, or by **contract** or agreement in connection with any

> business of the **insured** other than the
> rental of the **insured** premises.
>
> b.  **property damage** to property owned by any
> **insured**;
>
> c.  **property damage** to property rented to
> occupied or used by or in the care of the
> **insured**;
>
> . . .
>
> i.  **property damage** or **personal injury** to
> premises you sell, give away or abandon, if
> the **property damage**, or **personal injury**
> arises out of those premises.

Doc.  No. 15-3, Miller Decl. Ex. 2.

## B.    Procedural History

After notifying the Wimberlys that it was defending the underlying

suit subject to a reservation of rights, State Farm filed this declaratory relief action

on August 12, 2011.  The suit is based upon diversity of citizenship -- State Farm

is an Illinois Corporation, and the Wimberlys are residents and citizens of

California.  Doc. No. 1, Compl. ¶¶ 1-2.  The suit seeks a declaration that it is not

required to defend and/or indemnify the Wimberlys in the underlying action

because the Policy is not applicable to the claims in the underlying action.  On

December 2, 2011, the Wimberlys filed a counterclaim against State Farm, seeking

declaratory relief and making claims for breach of contract and specific

performance.

On February 23, 2012, State Farm filed its Motion for Summary

Judgment, with a hearing set for April 23, 2012.  The Wimberlys filed their

Opposition on April 2, 2012.  The Motion was then withdrawn, but was re-instated,

and State Farm filed its Reply on June 4, 2012.  A hearing was held on June 18,

2012.  The Wimberlys filed a Supplemental Memorandum in Opposition on June

25, 2012, and State Farm filed a corresponding Supplemental Reply on July 2,

2012.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

      "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

# IV.  <u>ANALYSIS</u>

The court outlines the legal framework for interpreting the Policy and

determining the scope of an insurer's coverage duties, and then addresses the

parties' arguments.

## A.    **Framework for Construing Insurance Contracts**

"Every insurance contract shall be construed according to the entirety

of its terms and conditions as set forth in the policy, and as amplified, extended,

restricted, or modified by any rider, endorsement or application attached to and

made a part of the policy."  Hawaii Revised Statutes ("HRS") § 431:10-237.  Thus,

under Hawaii law, courts must look to the language of the insurance policy to

determine the scope of an insurer's duties.  *See Sentinel Ins. Co. v. First Ins. Co. of*

*Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994); *see also Hawaiian Ins. &*

*Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) ("In

the context of insurance coverage disputes, we must look to the language of the

insurance policies themselves to ascertain whether coverage exists, consistent with

the insurer and insured's intent and expectations."); *Burlington Ins. Co.*, 383 F.3d

at 945 ("In Hawaii, the terms of an insurance policy are to be interpreted according

to their plain, ordinary, and accepted sense in common speech.").

Insurance policies must nevertheless be construed "in accordance with the reasonable expectations of a layperson." *Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co.*, 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing *Dawes v. First Ins. Co. of Haw.*, 77 Haw. 117, 121, 883 P.2d 38, 42 (1994)).  The Hawaii Supreme Court classifies insurance contracts as "contracts of adhesion" and "ha[s] long subscribed to the principle that [insurance contracts] must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Guajardo v. AIG Haw. Ins. Co.*, 118 Haw. 196, 202, 187 P.3d 580, 586 (2008) (citing *Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 411-12, 992 P.2d 93, 106-07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted)).

An insurance company's duty to defend is broader than its duty to indemnify and "arises whenever there is the mere potential for coverage." *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 326, 832 P.2d 733, 735 (1992) (citations omitted).  "In other words, the duty to defend 'rests primarily on the *possibility* that coverage exists.  This possibility may be remote but if it exists[,] the [insurer] owes the insured a defense.'" *Dairy Road Partners*, 92 Haw. at 412, 992 P.2d at 107 (quoting *Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982)).

In determining whether an insurer has a duty to defend, Hawaii courts

apply the "complaint allegation rule," where

> [t]he focus is on the alleged claims and facts.  The duty to
> defend "is limited to situations where the pleadings have
> alleged claims for relief which fall within the terms for
> coverage of the insurance contract.  'Where pleadings fail
> to allege any basis for recovery within the coverage
> clause, the insurer has no obligation to defend.'"

*Burlington Ins. Co.*, 383 F.3d at 944-45 (quoting *Hawaiian Holiday Macadamia

Nut Co. v. Indus. Indem. Co.*, 76 Haw. 166, 169, 872 P.2d 230, 233 (1994)).  "In

determining whether coverage exists under a liability policy, Hawaii courts do not

look at the way a litigant states a claim, but rather at the underlying facts alleged in

the pleadings."  *Allstate Ins. Co. v. Miller*, 732 F. Supp. 2d 1128, 1134 (D. Haw.

2010) (citing *Bayudan v. Tradewind Ins. Co.*, 87 Haw. 379, 387, 957 P.2d 1061,

1069 (Haw. App. 1998)); *see also Dairy Road Partners*, 92 Haw. at 417, 992 P.2d

at 112 ("[W]hen the *facts* alleged in the underlying complaint unambiguously

exclude the possibility of coverage, conclusory assertions contained in the

complaint regarding the legal significance of those facts (such as that the facts as

alleged demonstrate 'negligent' rather than 'intentional' conduct) are insufficient

to trigger the insurer's duty to defend.").

      To obtain summary judgment that it has no duty to defend, an insurer

has the burden of proving that there is "no genuine issue of material fact with

respect to whether a *possibility* exist[s]" that the insured will incur liability for a claim covered by the policy. *Dairy Road Partners*, 92 Haw. at 412, 992 P.2d at 107. In other words, Plaintiff must prove that it would be impossible for the underlying party in the underlying lawsuit to prevail against Defendants on a claim covered by the Policy. *See id*. at 412-13, 992 P.2d at 107-08. "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." *Id*. at 412, 992 P.2d at 107.

**B.     Application of Framework**

> **1.      *Claims Arising out of a Breach of Sales Contract Are Not Covered***

State Farm first argues that the underlying action alleges claims for, or arising out of, a breach of contract, which do not constitute an "occurrence" within the meaning of the Policy. *See Burlington Ins. Co.*, 383 F.3d at 949 ("[C]ontract and contract-based tort claims are not within the scope of [liability] policies under Hawaii law."). *Burlington* also indicates similar claims for unfair and deceptive trade practice violations are not covered. *Id.* at 943. And indeed the Wimberlys do not oppose State Farm's arguments as to coverage over these claims arising out of breach of contract. Thus, State Farm owes no coverage duties as to the claims arising from the Wimberly's alleged failure to disclose the condition of the retaining wall in the sales transaction. *See also State Farm Fire & Cas. Co. v.*

15

*Thompson*, 2010 WL 2017101, at *9 (D. Haw. May 20, 2010) (Mollway, J.)

(reiterating that a claim for "negligent" failure to disclose defects in the sale of real

estate arose out of an alleged breach of a contractual duty and thus did not arise

from an occurrence or accident under the terms of liability policy).

      Likewise, State Farm argues -- without opposition from the

Wimberlys -- that it owes no coverage for allegations of intentional and "negligent

misrepresentation." *See, e.g.*, *Hawaiian Holiday Macadamia Nut Co.*, 76 Haw. at

170, 872 P.2d at 234 (holding that claims for breach of contract and fraud are not

negligence claims resulting from accidental conduct, and where an insurance

policy provides coverage for accidental conduct only, an insurer has no duty to

defend); *Thompson*, 2010 WL 2017101, at *8-9 (citing numerous cases for

proposition that claims for negligence and negligent misrepresentation in

connection with sale of home did not constitute an "occurrence"); *see also Safeco*

*Ins. Co. of Am. v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990) (holding that a

failure to disclose an alleged misrepresentations regarding defective condition of

property does not constitute an "occurrence").

      Further, Hawaii's insurance code specifically provides that there can

be no coverage for punitive damages.  *See* HRS § 431:10-240 ("Coverage under

any policy of insurance issued in [Hawaii] shall not be construed to provide

coverage for punitive or exemplary damages unless specifically included.");

*Allstate Ins. Co. v. Takeda*, 243 F. Supp. 2d 1100, 1109 (D. Haw. 2003).

**2.     *Count Two Does Not Trigger Coverage -- the* Thompson *Cases Are Distinguishable***

The only coverage question remaining is whether the underlying

complaint alleges facts that could lead to a negligence claim against the Wimberlys

that is independent of claims arising out of the sales contract.  In this regard, two

decisions from this district -- *Thompson*, 2010 WL 2017101, and an earlier

decision arising out of the same facts, *RLI Ins. Co. v. Thompson*, 2010 WL

1438925 (D. Haw. Apr. 12, 2010) (Kay, J.) -- are the key cases.  These cases arose

from a similar (but ultimately distinguishable) factual background as the instant

case.  They addressed whether insurers owed coverage duties against an underlying

action arising out of a failure to disclose wood rot/termite damage in the sale of

real property, where the underlying action alleged claims against the seller

sounding in breach of contract and fraud.

The *Thompson* cases ruled consistently with each other, first finding

that most of the underlying claims did not constitute "occurrences" for purposes of

insurance coverage because the underlying action alleged uncovered breach of

contract claims, or allegations of intentional conduct:

> . . . . Applying the complaint allegation rule, *see Burlington Ins. Co.*, 383 F.3d at 944, and construing the complaint in the light most favorable to the Thompsons for purposes of this summary judgment motion, the court sees the Davises as *possibly claiming negligent failure to disclose damage or possibly negligent repair of the damage*. In either case, the "property damage" that was supposedly fixed could not have been caused by the alleged negligence. Any alleged failure to disclose did not cause any already existing termite damage, dry rot, or other structural problem. Similarly, any alleged negligence in repairing the termite damage, dry rot, or other structural problems cannot be said to have caused that damage. *Accordingly, to the extent the underlying complaint asserts "property damage" for any damage that was supposedly (even if insufficiently) fixed, it does not assert a covered claim.*

*Thompson*, 2010 WL 1438925, at *9 (emphasis added); *see also Thompson*, 2010 WL 2017101, at *6-7 (ruling similarly). But the decisions found a potential for coverage in allegations that the seller could have "negligently repaired" wood rot and "exacerbated" existing damage that continued after the sale:

> It is unclear, however, *whether the underlying complaint is asserting that any negligence exacerbated prior damage. That is, if the failure to properly fix the earlier damage (e.g., dry rot) caused further property damage (e.g., more extensive dry rot), such a claim could possibly be covered under the Policy, as the alleged negligence might be accidental conduct causing "property damage."* . . . . Given the record before this court, [the insurer] does not establish as a matter of law that it is impossible for the negligence claim in the underlying lawsuit to be covered by the Policy. Accordingly, based on the current record, [the insurer]

18

> does not meet its burden of showing that it has no duty to
> defend and/or indemnify the Thompsons with respect to
> the Davises' negligence claim.  *See Tri-S Corp. v. W.
> World Ins. Co.*, 110 Haw. 473, 488, 135 P.3d 82, 97
> (2006).

*Thompson*, 2010 WL 1438925, at *9 (emphasis added); *see also Thompson*, 2010

WL 2017101, at *10 (construing the underlying complaint as possibly alleging

covered negligent conduct "for the same reasons" as in the prior *Thompson*

decision).

      Thus, under the *Thompson* cases, the possibility of coverage was

limited to a potential claim for negligence in repairing or overseeing dry rot repair

that caused further property damage (*i.e.*, an "exacerbation of damages").

      As to the potential for a claim based on "exacerbation of damages,"

the *Thompson* cases are readily distinguishable.  The underlying complaint in

*Thompson* alleged that the seller, prior to closing, hired a contractor to perform

construction work on the property and "instructed the contractor to 'cover over' the

termite damage."  2010 WL 2017101, at *1.  The seller did this rather than having

the contractor repair the termite damage or remove the damaged parts of the

structure.  *Id.*  That is, there were factual allegations that could have constituted, or

led to, a claim for a "negligent fix" that made existing damage worse or

"exacerbated" the damage.

Here, on the other hand, although the underlying complaint alleges the existence of a wall with an undisclosed improper "patchwork repair," it does not allege that the Wimberlys actually did that repair (or instructed others in how to patch the wall), much less that they did so negligently or attempted to cover up any condition of the wall.  Nor are there allegations that such repair caused further additional ("exacerbated") damages to the condition of the wall.  Indeed, the underlying complaint does not allege *any* facts regarding the "patch" (other than its existence) -- *e.g.*, who did the patch, what role the Wimberlys had in such repair (overseeing or directing), or whether the repair exacerbated the condition of the wall.

Rather, the underlying complaint is limited to allegations that the Wimberlys and/or agents misrepresented the condition of the wall, or improperly filled out the disclosure statement.  It alleges that the Wimberlys or their agent completed the disclosure statement negligently.  It alleges the Wimberlys should have known that the wall was in danger of collapse and thus negligently failed to disclose its condition.  But nowhere does it allege that the wall itself was repaired negligently and that such a repair caused further damage -- the underlying complaint only alleges improprieties in the sales transaction.  The "patchwork

repair" simply describes the condition that was not disclosed (intentionally or negligently) on the disclosure form.

Thus, under the complaint allegation rule, no facts are pled that would indicate the potential for coverage under such a "negligent exacerbation of condition" claim. *See Dairy Road Partners*, 92 Haw. at 417, 992 P.2d at 112 ("[W]hen the facts alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate 'negligent' rather than 'intentional' conduct) are insufficient to trigger the insurer's duty to defend."); *Bayudan*, 87 Haw. at 387, 957 P.2d at 1069 (agreeing with courts holding "that the mere relabeling of a claim for which coverage is excluded to a claim which could raise the potential for coverage is not a permissible manner in which to trigger an insurer's duty to defend").

In short, the *Thompson* cases are distinguishable, and the underlying action fails to allege a covered negligence claim against the Wimberlys.

### 3. *Coverage Is Otherwise Excluded -- a Separate and Independent Ground for Finding No Duty to Defend or Indemnify*

What's more, even if there were some question of fact as to whether the underlying action alleged an "occurrence," coverage is also barred by an exclusion from coverage for property damage sold to others.  The exclusion is an

additional and independent ground for a finding of no coverage.  Specifically, the

Rental Dwelling Policy unambiguously excludes liability coverage for:

> i. **property damage** or **personal injury** to premises
> you sell, give away or abandon, if the **property
> damage**, or **personal injury** arises out of those
> premises.

The exclusion -- otherwise known as an "alienated premises"

exclusion -- is clear and unambiguous.  The underlying action alleges property

damage[2] to "premises" that the Wimberlys sold, and that damage allegedly "arose

out of those premises."  Under the exclusion, coverage is barred.  *Cf. State Farm*

*Auto Ins. Co. v. Henderson Enters.*, 2000 WL 33969976, at *2 (W.D. Ky. Mar. 9,

2000) (enforcing nearly identical exclusion, barring coverage against suit alleging

liability for damage that occurred after sale); *Borden, Inc. v. Affiliated FM Ins. Co.*,

682 F. Supp. 927, 931 (S.D. Ohio 1987) (applying "alienated premises" exclusion

to relieve insurer of duty to defend or indemnify insured against suit by purchaser

for concealment of toxic waste); *Stull v. Am. States Ins. Co.*, 963 F. Supp. 492, 494

---

[2] This assumes that the allegations could constitute "property damage" notwithstanding (1) the court's prior analysis distinguishing the *Thompson* decisions, and (2) the Policy's "owned property exclusion," which excludes "property damage to property owned by any insured" and "property damage to property rented to, occupied or used by or in the care of the insured."  Doc. No. 15-3, Policy at § II (Exclusions), 2.b. & c.  State Farm points out that cases cited by the Wimberlys in supplemental briefing -- *Binkley v. State Farm Fire & Casualty Co.*, 2001 WL 1664672, *5 (Cal. App. Dec. 28, 2001) and *Walnut Grove Partners LP v. American Family Mutual Insurance Co.*, 2004 WL 5348863, *4 (S.D. Iowa Oct. 4, 2004) -- both concern a third-party's property, not to property owned or sold by the insured.

(D. Md. 1997) (stating that the "'alienated premises' clause operates to exclude coverage for claims arising from property sold by the insured regardless of when the alleged wrongful act occurred") (citing *Reliance Ins. Co. v. Povia-Ballantine Corp.*, 738 F. Supp. 523, 525 (S.D. Ga. 1990)).

In sum, the court finds that there is no genuine issue of material fact that the underlying action does not raise the possibility of coverage under the Policy.  State Farm does not have a duty to defend Defendants in the underlying action, and thus has no duty to indemnify the Wimberlys.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS State Farm's Motion for Summary Judgment.  State Farm is entitled to a declaration that it owes no coverage duties as to the underlying complaint.  It follows that State Farm is entitled to summary judgment on the Wimberlys' counterclaim.  Judgment shall issue in favor of State Farm and against the Wimberlys.  The Clerk of Court is

///

///

///

///

///

directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 6, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*State Farm Fire & Cas. Co. v. Wimberly et al.*, Civ. No. 11-00492 JMS/KSC; Order Granting State Farm Fire and Casualty Company's Motion for Summary Judgment